## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *ex rel.*, CAITLIN ADAMS AND <br> CARLEY HAYS <br><br> Relators, <br><br> v. <br><br> ERIK HOLDINGS, INC. <br><br> -and- <br><br> WILLIAM GROJEAN <br><br> -and- <br><br> RIVERSIDE TRANSPORT, INC. <br><br> -and- <br><br> TRANSCO LINES, INC <br><br> Defendants. | **Jury Trial Demanded** <br><br><br> Case No: 2:23-cv-2149-EFM-TJJ <br><br><br> **FILED UNDER SEAL** <br> PURSUANT TO 31 U.S.C. § 3730 <br><br> **DO NOT ENTER ON PACER** |

## COMPLAINT

United States of America ("USA"), *ex rel.* Caitlin Adams and Carley Hays ("Relators"), brings this Complaint against Defendants ERIK Holdings, William Grojean, Riverside Transport, and Transco Lines (collectively "Defendants") for primary and successor liability for treble damages and civil penalties arising from Defendants' inaccurate and fraudulent PPP loan application that induced false claims to be made, and payments received, in violation of the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). Relators alleges and states as follows:

### PRELIMINARY STATEMENT

1. This is a civil action brought by Relators on behalf of the United States to

1

recover treble damages, civil penalties and restitution owed to the Government as a result of Defendants' fraud scheme. Defendants knowingly submitted, caused to be submitted, and/or conspired to be submitted false claims to, committing a fraud upon the United States Government in violation of the FCA.

## PARTIES

2. Relators Caitlin Adams and Carley Hays are individuals residing in the States of Missouri and Kansas.

3. Relators are employed by the State of Missouri and investigate fraud in housing.

4. The following information was not discovered during Relators' course of employment and is unrelated to any of their housing investigations. Relators discovered the following information while doing independent research into PPP loans.

5. On March 17, 2023 Relators filed a whistleblower complaint with Office of the Inspector General for the SBA, complaint ID: 20230317cnsk.

6. Relators are Original Sources as defined by 31 U.S.C. § 3730(e)(4)(A), as they have direct and independent knowledge, and have previously provided information to the government prior to this action.

7. Relators discovered that Defendants applied for and received what is believed to be two improper Paycheck Protection Program loans ("PPP loan") for the amounts of $6,680,000.00 and $6,183,300.00

8. Defendant ERIK Holdings, INC., ("ERIK Holdings") is a for-profit corporation formed under the laws of the State of Indiana, with its principal place of business and registered agent located at 10 W. Market Street, Suite 1400, Indianapolis IN, 46204.

9. ERIK Holdings PPP Loan #7485257009 stated that 5400 Kansas Avenue, Kansas City, KS 66106, is the address for ERIK Holdings.

10. ERIK Holdings does not have a registered agent in the State of Kansas and is not registered to do business in the State of Kansas or Wyandotte County.

11. ERIK Holdings secretary of state business filing is attached hereto as Exhibit A.

12. Defendant Riverside Transport, Inc. is a for-profit corporation founded under the laws of the State of Delaware and is registered to do business and is in good standing with the State of Kansas. Its principal place of business is 5400 Kansas Avenue, Kansas City, KS 66106. The principal place of business for Riverside Transport is the same address used in ERIK Holdings PPP loan application.

13. According to its website, Riverside Transport employs close to 1,100 employees.

14. The maximum number of employees to qualify for a PPP loan is 500. 15 U.S.C. § 636(a)(36)(D)(i)(I).

15. Riverside Transport secretary of state business filing is attached hereto as Exhibit B.

16. Defendant William Grojean is the President of ERIK Holdings and the President of Riverside Transport.

17. Relators have knowledge of an additional PPP loan application, Loan #7453377005, by Transco Lines for $6,183,300.00.

18. Defendant Transco Lines ("Transco" "Transco Lines") was believed to be acquired by Riverside Transport; however, it appears to operate independently.

19. Transco Lines and Riverside Transport share the same Chief Financial Officer and Head of Human Resources.

20. The CFO of Transco Lines and Riverside Transport is Ryan Jones.

21. The Director of Human Resources of Transco Lines and Riverside Transport is Katie Avila.

22. Defendant Transco Lines is a for-profit corporation founded under the laws of the State of Arkansas, with its principal business address is 401 N Arkansas Ave, Russellville, Arkansas 72801. The company is registered in both Arkansas and Indiana.

23. Transco Lines secretary of state business filing is attached hereto as Exhibit C.

24. The Transco Lines PPP loan application was approved the same day as the ERIK Holdings application, April 7, 2020, at the same bank, Community Banks of Colorado.

## JURISDICTION, VENUE AND STATUTORY REQUIREMENTS

25. This action arises under the False Claims Act, 31 U.S.C. § 3729, *et seq*.

26. Jurisdiction in this Court is proper pursuant to 31 U.S.C. §§ 3732(a) and 3730(b) and 28 U.S.C. § 1331.

27. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the acts complained of herein took place in part in this District, and Defendants transacted and continue to transact business in this District.

28. Pursuant to 31 U.S.C. § 3730(b)(2), along with this Complaint, the Relators will serve to the Attorney General of the United States and the United States Attorney for the District of Kansas a statement of all material evidence and information currently in their possession and of which they are the original source. This disclosure statement is supported by material evidence known to Relator at the time of filing establishing the existence of

Defendants' false claims. Because the statement includes attorney-client communications and work product of Realtors' attorney, and was submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, Relators understand this disclosure to be Confidential.

## THE FALSE CLAIMS ACT

29. The FCA provides, in part, that any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval is liable to the United States for damages and penalties. *See* 31 U.S.C. § 3729(a)(1)(A).

30. The FCA additionally provides, in part, that any person that knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, in violation of 31 U.S.C. § 3729(a)(1)(B), is liable to the United States for damages and penalties.

31. To show that an entity acted "knowingly" under the FCA, the United States must establish that the entity: (1) had actual knowledge of the information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information. See United States ex. rel. Burlbaw v. Orenduff, 548 F.3d 931, 945, n. 12 (10th Cir. 2008) (citing 31 U.S.C. § 3729(b)).

32. Finally, the FCA provides, in part, that any person or persons who conspire to commit violations set forth in the paragraphs above, is liable to the United States for damages and penalties, *see* 31 U.S.C. § 3729(a)(1)(C).

33. A plaintiff does not have to prove that the defendant had the specific intent to defraud the United States. *See* 31 U.S.C. § 3729(b)(1); *see also United States ex rel. Aakhus v. Dyncorp, Inc.*, 136 F.3d 676, 682 (10th Cir. 1998) (explaining that "no proof of specific intent to

defraud is required" under the FCA) (citation omitted).

## THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

34. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act, ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. The Small Business Administration ("SBA") received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

35. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

36. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

37. Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

38. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized

representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

39. Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

40. After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to answer "Yes" to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:
- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

41. Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

42. Defendants knowingly presented and/or made, or caused to be presented and/or made, the false claims and statements at issue, in order to participate in the PPP that SBA administers.

## ALLEGATIONS

ERIK HOLDINGS PPP APPLICATION

43. On or about April 7, 2020 ERIK Holdings was approved for a PPP loan for $6,677,900.00.

44. ERIK Holdings PPP application data is attached hereto as Exhibit D.

45. The principal place of business listed on ERIK Holdings' PPP application is 5400 Kansas Avenue, Kansas City, KS 66106.

46. This is not the address located on Erik Holding's annual report located on the Secretary of state's website for the State of Indiana.

47. ERIK Holdings does not have a registered agent in the State of Kansas and is not registered to do business in the State of Kansas nor Wyandotte County.

48. The address provided is rather the principal address of Riverside Trucking.

49. Both companies are owned and operated by William Grojean.

50. Riverside Trucking was not eligible for a PPP loan, due to the size of the company being over 500 persons. The company website states that the company employs over 1,100 people.

51. The maximum number of employees to qualify for a PPP loan is 500. 15 U.S.C. § 636(a)(36)(D)(i)(I).

52. The NAICS Code used on the applications for both Riverside Transport and Transco Lines is 484121 General Freight Trucking, Long Distance.

53. Pursuant to 13 C.F.R §12.201 there is not a standard number of employees established by the SBA for Defendants' industries that would grant them an exception to the 500-employee cap.

54. Therefore, the maximum number of employees that Riverside Trucking and Transco Lines could employ is 500 to be eligible for PPP loans.

55. According to each company's website, Transco Lines and Riverside Transport employ substantially more employees than the allowable 500.

56. If the information on Transco Lines website is accurate, then Transco lines is and was not eligible for PPP funding in 2020.

57. Transco Lines PPP application data is attached hereto as Exhibit E.

58. ERIK Holdings and Riverside trucking do not share any corporate structure other than that they are both owned and operated by William Grojean.

59. It is not known whether ERIK Holdings has any employees.

60. Regardless of whether Riverside Trucking was eligible for a PPP loan in April 2020, the PPP loan application was for ERIK Holdings, not Riverside Trucking.

61. Defendants used the address and the employee information from Riverside Trucking on the Erik Holdings PPP Loan Application.

62. According to a payroll employee for Riverside Trucking, who spoke on a recorded call with Relator, ERIK Holdings is not a parent company of Riverside Trucking.

63. The PPP loan application was approved through Community Banks of Colorado.

64. On or about February 3, 2021, William Grojean and wife Maureen Grojean purchased a residence located at 26854 Hickory Blvd. Bonita Springs FL 34134 for $6,495,000.00, ten months after the PPP loan approval.

65. The deed to the 26854 Hickory Blvd residence is attached hereto as Exhibit F.

66. In 2020, William Grojean and wife purchased land in Colorado with the intent to build a residence. In 2022, the residence was completed at 149 Holden Rd., Beaver Creek, Colorado. According to the warranty deed the sale price was $7,520,000.00.

67. The Deed to the 149 Holden Rd. residence is attached hereto as Exhibit G.

68. Both PPP loan applications were processed in Colorado by Community Banks of Colorado.

## COUNT I:

**Violation of the False Claims Act: Presenting False Claims for Payment  
31 U.S.C. § 3729(a)(1) (2000), and, as amended, 31 U.S.C.(a)(1)(A)**

69. Relators incorporate by reference the above paragraphs as if set forth fully here.

70. Relators and the United States seek relief against Defendants under Section 3729(a)(1) of the False Claims Act, 31 U.S.C. § 3729(a)(1) (2000), and, as amended, 31 U.S.C. §3729(a)(1)(A).

71. As set forth in detail above in paragraphs 32-63, Defendants presented—or caused to be presented—claims for reimbursement to the United States government that were false or fraudulent.

72. Accordingly, Defendants ERIK Holdings, William Grojean, knowingly

presented false or fraudulent claims – or caused the presentment of false or fraudulent claims – for payment or approval in violation of 31 U.S.C. § 3729(a)(1) (2000), and, as amended, 31 U.S.C. § 3729(a)(1)(A).

73. By reason of the false or fraudulent claims that Defendants knowingly presented (or caused to be presented) to SBA, the United States has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II:

**Violation of the False Claims Act: Use of False Statements**
**31  U.S.C. § 3729(a)(2) (2000), and, as amended, 31 U.S.C. § 3729(a)(1)(B)(Supp. 2009)**

74. Relators incorporate by reference the above paragraphs as if set forth fully here.

75. Relators and the United States seek relief against Defendants under Section 3729(a)(2) of the False Claims Act, 31 U.S.C. § 3729(a)(2) and, as amended, 31 U.S.C. § 3729(a)(1)(B) (Supp. 2009).

76. As set forth in detail above in paragraphs 32-63, Defendants provided false and fraudulent PPP loan applications to SBA. In doing so, Defendants submitted loan applications to the United States that were false or fraudulent.

77. By reasons of these false records or statements that Defendants used (or caused to be used), the United States has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false record or statement.

## COUNT III

**Violation of the False Claims Act: Conspiring to Violate the False Claims Act
U.S.C. § 3729(a)(3) (1986), and, as amended, 31 U.S.C. § 3729(a)(1)(C)**

78. Relators incorporate by reference the above paragraphs as if set forth fully here.

79. Relators and the United States seek relief against Defendants under Section 3729(a)(3) of the False Claims Act, 31 U.S.C. § 3729(a)(3)(1986) and, as amended, 31 U.S.C. § 3729(a)(1)(C).

80. A conspiracy violation of the FCA occurs when a person "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of the FCA. 31 U.S.C. § 3729(a)(1)(C).

81. As set forth in detail above in paragraphs 32-63, Relators allege that Defendants entered into an agreement and plan to conspire to violate the FCA through their policies and practices, which were devised, perpetrated and implemented by Defendants and other unnamed co-conspirator providers as developed by the material and witnesses provided by Relators.

82. As set forth throughout the Complaint, these Co-Defendants and Co-Conspirators agreed to commit acts in furtherance of these fraudulent business operations and took actions in furtherance of their conspiracy.

83. The conspiracy of these Co-Defendants and Co-Conspirators caused the submission of false and fraudulent loan applications, seeking loan payment under the Paycheck Protection Program that they knowingly did not qualify for.

84. Accordingly, conspired to defraud the United States by getting false or fraudulent claims allowed or paid, in violation of 31 U.S.C. § 3729(a)(3)(1986), and conspired to commit violations of 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), in violation of 31 U.S.C.

§ 3729(a)(1)(C) (2009).

85. By reason of the false or fraudulent claims and Defendants' actions taken in furtherance of their conspiracy to get paid by reasons of their conspiracy to violate 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), the United States has been damaged in a substantial amount to be determined at trial and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## RELIEF SOUGHT

WHEREFORE, Relators respectfully request that the Court enter judgment against Defendants and in favor of the United States for each and every Count asserted above as follows:

a. that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

b. that civil penalties be imposed for each and every false claim that Defendants presented—or caused to be presented—to the United States and/or its grantees as permitted under 31 U.S.C. § 3729;

c. that pre- and post-judgment interest be awarded along with reasonable attorneys' fees, costs, and expenses that Relators necessarily incurred in bringing and pressing this case;

d. that the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

e. that Relators be awarded the maximum amount allowed to him pursuant to the False Claims Act;

  f.  that Relators be awarded the maximum amount allowed to him of any portion of a judgment or settlement fund that goes to any State government; and

  g.  that this Court award such other and further relief as it deems proper.

### Demand for Jury Trial and Designation of Place of Trial

Relators, on behalf of the United States, and on behalf of themself, hereby demand a trial by jury on all counts and allegations of wrongful conduct as alleged in this Complaint in the United States District Court for the District of Kansas at Kansas City, Kansas.

Respectfully Submitted,



*/s/ Greg N. Tourigny*
Greg N. Tourigny DKAN #78874
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
(816) 945-2861
greg@tourignylaw.com